UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BILMAYO IZAZAGA CARDENAS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SERGIO ALBARRAN, et al.,<br><br>Defendants. | Case No.  26-cv-06435-JD<br><br>**ORDER RE TEMPORARY RESTRAINING ORDER** |

Petitioners Bilmayo Izazaga Cardenas, Leonardo Izazaga Garcia, and Juan Hidalgo Izazaga, citizens of Mexico, are being held in civil immigration detention in San Francisco, California.  They filed a petition for a writ of habeas corpus and an application for a temporary restraining order for release from detention pending further proceedings.  *See* Dkt. No. 1 (petition); Dkt. No. 2 (TRO).  Respondents are Sergio Albarran, Field Office Director of the San Francisco Immigration and Customs Enforcement (ICE) Office; David Venturella, Acting Director of ICE; Markwayne Mullin, Secretary of the U.S. Department of Homeland Security; and Todd Blanche, Acting U.S. Attorney General, all named in their official capacities.  The United States filed an opposition brief, Dkt. No. 5, and the petitioner filed a reply, Dkt. No. 7.

The Court held a hearing on the TRO application on July 2, 2026.  The record established that the arrests of petitioners were unlawful.  Consequently, respondents are directed to release petitioners from custody by the close of business today.

The factual circumstances are undisputed.  Petitioners Izazaga Cardenas, Izazaga Garcia, and Hidalgo Izazaga are Mexican citizens present in the United States without lawful immigration status.  Dkt. No. 6 (Deportation Officer Mears Decl.) at 3-5.  On June 26, 2026, as part of an ICE

operation to apprehend Cristian Castro-Martinez,[1] ICE officers saw petitioners leave Castro-Martinez's house, pulled them over, and arrested them. Dkt. No. 6 at ECF p. 9. Prior to the arrests, the officers did not have warrants to arrest petitioners, and did not individually assess whether petitioners would be likely to escape before a warrant could be issued. *See* Dkt. No. 6 at ECF p. 9.

Respondents were given notice of the TRO application, filed an opposition, and appeared at the hearing. Consequently, "the same legal standard as a motion for a preliminary injunction applies." *Fang v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 16-CV-06071-JD, 2016 WL 9275454, at \*1 (N.D. Cal. Nov. 10, 2016), *aff'd*, 694 F. App'x 561 (9th Cir. 2017). Under these familiar standards, a preliminary injunction is "an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20. The irreparable harm must be "*likely* in the absence of an injunction" and not merely possible, no matter how strong the likelihood that plaintiffs will prevail on the merits. *Id.* at 21-22 (emphasis in original).

In our circuit, it is well established that a preliminary injunction may also be issued where "the likelihood of success is such that 'serious questions going to the merits were raised and the balance of hardships tips sharply in [plaintiff's] favor.'" *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (citation omitted). Our circuit held after careful consideration that "the 'serious questions' approach survives *Winter* when applied as part of the four-element *Winter* test." *Id.* at 1131-32; *see also id.* at 1134 (affirming "the longstanding discretion of a district judge to preserve the *status quo* with provisional relief until the merits could be sorted out in cases where clear irreparable injury would otherwise result and at least 'serious questions' going to the merits are raised") (quoting *Save Strawberry Canyon v. Dep't of Energy*, No. C 08-

[1] The record shows Castro-Martinez is a United States citizen and the son of the owner of a landscaping business in Hayward, California, where petitioners are said to have worked. Dkt. No. 7-2 (Castro Decl.) at 2.

United States District Court
Northern District of California

03494 WHA, 2009 WL 1098888, at *1-3 (N.D. Cal. Apr. 22, 2009)).  Our circuit has continued to apply this test. *See, e.g., hiQ Labs, Inc. v. LinkedIn Corporation*, 31 F.4th 1180, 1191 (9th Cir. 2022) (finding that "hiQ has raised 'serious questions going to the merits'" and affirming the district court's grant of a preliminary injunction) (citation omitted); *Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1177 (9th Cir. 2021) ("[T]he sliding scale test 'remains viable after the Supreme Court's decision in *Winter.*'") (citation omitted).

The authority of the ICE agents to make the warrantless arrests in this case is governed by 8 U.S.C. § 1357(a)(2).  "Section 1357(a)(2) requires that the arresting officer reasonably believe that the alien is in the country illegally and that she is likely to escape before a warrant can be obtained for her arrest." *Mountain High Knitting, Inc. v. Reno*, 51 F.3d 216, 218 (9th Cir. 1995). The same requirements are imposed by Department of Homeland Security regulations.  8 C.F.R. § 287.8(c)(2)(ii) ("A warrant of arrest shall be obtained except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained.").

The record indicates, and the government agreed at the hearing, that the arrests in this case were warrantless.  *See* Dkt. No. 6 at ECF p. 9.  The record also indicates, and the government again agreed at the hearing, that none of the officers made any individualized determination that any petitioner was "likely to escape before a warrant can be obtained for his arrest."  8 U.S.C. § 1357(a)(2).  Consequently, each of the arrests violated 8 U.S.C. § 1357(a)(2).  It may be, as the government suggests, that petitioners did not dispute their immigration status when confronted by the agents.  But that alone is not enough under Section 1357(a)(2) to authorize a warrantless arrest. To conclude otherwise would erase the statutory element of a likelihood of escape that is required to make a warrantless arrest.  Respondents lack the power to rewrite Congress's commands.  *See Util. Air Regul. Grp. v. E.P.A.*, 573 U.S. 302, 325 (2014) ("An agency has no power to . . . rewrit[e] unambiguous statutory terms.").

After the arrests occurred on June 26, 2026, ICE officials issued warrants for the arrests of petitioners.  *See* Dkt. No. 6, ECF pp. 21, 34, 40.  The government did not identify a case or other authority stating that warrants issued after the fact might cure a violation of Section 1357(a)(2).  A number of other district courts have concluded that such post-arrest bootstrapping will not remedy

United States District Court
Northern District of California

an illegal arrest. *See, e.g., Ramirez Ovando v. Noem*, 810 F. Supp. 3d 1209, 1226 (D. Colo. 2025) ("But issuing post hoc warrants once plaintiffs had already been unlawfully arrested does nothing to cure the initial statutory violation. Under the defendants' reasoning, ICE could simply stop any suspected undocumented person, conduct a warrantless arrest with no probable cause of flight risk, and then bring the arrest within the color of law by issuing a warrant at the field office. This view effectively vitiates § 1357(a)(2)'s two-pronged probable cause requirement, which is aimed precisely at preventing such unrestrained immigration enforcement actions."); *Alfaro v. Mullin*, No. 26-0766 (GRB), 2026 WL 734348, at *5 (E.D.N.Y. Mar. 16, 2026), *clarified on denial of reconsideration sub nom. Sanchez Alfaro v. Mullin*, No. CV 26-0766 (GRB), 2026 WL 1142478 (E.D.N.Y. Apr. 27, 2026) ("Post-Arrest Issuance of an Administrative Arrest Warrant and Notice To Appear Does Not Cure the Illegal Arrest of Petitioner").  The government did not present a good reason to conclude otherwise here.

The government's fallback position that Section 1225 provides an independent basis for detention of the petitioners is also unavailing.  The Court declined the same argument in other cases, as many other district courts have. *See, e.g., Caicedo Hinestroza et al. v. Kaiser et al.,* 25-cv-07559-JD, Dkt. No. 8 (N.D. Cal. Sept. 9, 2025).  An arrest under Section 1226 requires a warrant, *see* 8 U.S.C. § 1226 ("On a warrant issued by the Attorney General, an alien may be arrested and detained"), and so that provision is of no help to the government here.

Overall, petitioners have at a minimum raised "serious questions going to the merits" of their habeas petition.  *Cottrell*, 632 F.3d at 1131.  For the other factors of injunctive relief, there is no question that the petitioners are experiencing immediate and irreparable harm from detention. *See Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017) (noting "the irreparable harms imposed on anyone subject to immigration detention").  In addition, the balance of equities and public interest in ICE's compliance with federal law weighs in the petitioners' favor. *See Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) ("It would not be equitable or in the public's interest to allow the state to violate the requirements of federal law.") (cleaned up).

Consequently, a TRO is granted to preserve the status quo while the merits of the habeas petition are resolved.  Respondents, and their officers, agents, employees, attorneys, and any

United States District Court
Northern District of California

4

person acting in concert with them, or at their behest, and who has knowledge of this injunction, are directed to immediately release from custody, by the end of business today, petitioners Bilmayo Izazaga Cardenas, Leonardo Izazaga Garcia, and Juan Hidalgo Izazaga. The parties are directed to jointly submit, by July 24, 2026, a proposed briefing schedule on the petition for habeas corpus.

There is no realistic likelihood of harm to respondents from enjoining their conduct, and so petitioners need not give security under Federal Rule of Civil Procedure 65(c). *See Jorgensen v. Cassiday*, 320 F.3d 906, 919-20 (9th Cir. 2003); *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999).

**IT IS SO ORDERED.**

Dated: July 2, 2026

JAMES DONATO
United States District Judge

United States District Court
Northern District of California

5